# James B. Simes' Appeal.

## Samuel Simes' Estate.

In construing a will, the fact is important that its writer evidently knew the meaning and effect of technical words, and such words will not be expunged on mere conjecture if they can be reconciled with the context of the will.

A testator, by his will, provided that the debts due him by his sons should "remain as a debt to his estate, which said debts are to bear interest and said interest is to be deducted from their quarterly dividends off of or from their shares in my estate," and, that no injustice should be done to his other heirs, he further directed his trustees "after one year from his decease to deduct quarterly from each of his said sons' quarterly dividends from his estate 20 per cent of the amount of their indebtedness until the whole amount of said indebtedness is paid. *Held:*

(*a*) That the fact that a son's quarterly dividend from the estate was much smaller than the quarterly payment directed to be made on account of the indebtedness, did not create a repugnancy calling for a reformation of the will; where a man directs that one sum shall be deducted from another, he means that the latter, if it turns out to be the smaller, shall be appropriated to the payment of the former.

(b)   The phrase, that the son's indebtedness should "remain as a debt to my estate," meant that the debt should not be forthwith collected; and hence there is no repugnancy between it and a further provision that one year from testator's death those debts should begin to be paid in quarterly instalments.

(Argued January 5, 1888.   Decided January 23, 1888.)

January Term, 1887, No. 292, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ.   Appeal of James B. Simes from a decree of the Orphans' Court of Philadelphia County sustaining the exceptions to the adjudication of the account of the trustees under the will of Samuel Simes, deceased.   Affirmed.

The facts of the case are as follows:
Samuel Simes died on March 6, 1885, leaving a will wherein he provided by article 6 as follows:
"I hereby direct my executors and trustees to allow any money or moneys advanced or loaned by me, or debts to me, contracted during my lifetime by my sons, Samuel F. and James B. Simes, to remain as a debt to my estate, which said debts are to bear interest, and said interest is to be deducted from their quarterly dividends, off of or from their shares in my estate; and in order that no injustice shall be done to my other heirs and wife, I direct my trustees after one year from my decease to deduct quarterly from each of my said two sons' quarterly dividends from my estate, 20 per cent of the amount of their said indebtedness, until the whole amount of said indebtedness is paid."

When the account of the trustees under this will came on for audit, it appeared that James B. Simes was indebted to the estate in the sum of about $25,000, while his quarterly dividend from the estate did not amount to more than $500.

Under this state of facts the auditing judge held that if the words of the will, as above, were to be taken according to their precise signification, there was a manifest repugnancy between the beginning and conclusion of the provision with regard to the sons' indebtedness; that the word "indebtedness" must have been written by mistake for "dividends;" that it was the intention of the testator that the quarterly dividends due from the estate to his son, James B. Simes, should be subjected to a de-

duction of 20 per cent, the amount of which being applied to his debt would in process of time extinguish it, it being allowed in the meantime to remain subject to the payment of interest, otherwise uncollected.

Exceptions were taken to these findings which the court sustained, Ashman, J., filing the following opinion:

In construing the will of this testator, the fact is important that its writer evidently knew the meaning and effect of technical words. We are left in no doubt as to who are his intended beneficiaries, nor as to what is the quantity of their respective interests. When, therefore, he uses à word about whose ordinary and accepted meaning there can be no possible question, nothing less than the certainty that to understand it in that sense will defeat his intention will justify us in giving to the word a secondary and unusual meaning, or in regarding its introduction into the will as *lapsus plumæ,* which is to be remedied by substituting another expression. Our hesitancy to do this will be increased by the circumstance that, in three out of the four places where it occurs, the word is obviously used in its popular signification.

The clause in the will to which these remarks apply, is as follows: [Article 6, given above.]

The will was written five years before the testator died. At the time of the death, James B. Simes was indebted to his father in the sum of about $25,000. His share of income from the estate has thus far been less than $2,000 per annum. It was contended on his behalf that the will, literally interpreted, commands the mathematical impossibility of deducting each quarter, one fifth of an indebtedness of $25,000, from a dividend which has never in any quarter exceeded $500. It was further contended that, apart from its absurdity, such a construction would directly contradict the direction in the same clause that the loan to the son should remain as a debt to the estate and should bear interest. To obviate this discrepancy it was suggested that the testator, when he provided that 20 per cent of the son's indebtedness should be so deducted, meant the indebtedness of the estate to the son as ascertained by the dividend which had accrued to him; or else, and which was more probable, that he had inadvertently used the word "indebtedness" in place of "dividends." This argument was attempted to be en-

forced by the citation of various cases in which courts, where the
will has revealed on its face a palpable mistake by the testator,
have corrected the error by rejecting or by adding such words
as were needed to carry out his intention.    The authority which
was chiefly relied on, Hart v. Tulk, 2 De G. M. & G. 300, was
the case of a will by which the properties of the testator were
classified in seven schedules, of which schedule four was given
in trust for a son; and it was held, on the ground that the
charges created by the will were disproportioned to the fund
embraced in that schedule, that schedule five had been intended;
and the will was reformed accordingly.

This case is only one of a multitude.   There are those which
show that the description of the subject-matter of a gift will be
corrected (Martin v. Dough, Ch. Cas. 198; Milner v. Milner,
1 Ves. Sr. 106; Philipps v. Chamberlaine, 4 Ves. Jr. 53; Sker-
ratt v. Oakley, 7 T. R. 492; Allen v. Lyons, 2 Wash. C. C.
475, Fed. Cas. No. 227); the intended gift will be supplied
(Freeman v. Freeman, 8 Vin. Abr. Devise, p. 51, Pl. 22; Door
v. Geary, 1 Ves. Sr. 255; Dobson v. Waterman, 3 Ves. Jr. 308,
note; Eatherly v. Eatherly, 1 Coldw. 461, 78 Am. Dec. 499);
and the description of the legatee will be amended (Powell v.
Biddle, 2 Dall. 70, 1 L. ed. 293; Tayloe v. Johnson, 63 N. C.
381; Cromie v. Louisville Orphans' Home Soc. 3 Bush, 365;
Wagner's Appeal, 43 Pa. 102; Bernasconi v. Atkinson, 17 Eng.
L. & Eq. Rep. 103; Re Rickit, 21 Eng. L. & Eq. Rep. 66).

The doubt here is not whether the court has the power to cor-
rect, but whether the necessity for correction exists.

It will be observed that on the face of the disputed clause
there is no repugnancy between its members.   Take the first pro-
vision, that the debts of the sons shall remain, as meaning that
they shall not be forthwith collected; there is surely no repug-
nancy between that provision and the subsequent direction that,
after one year from his death, those debts shall be paid in quar-
terly instalments.   They were to remain undemanded during the
first year, although in that interval the sons were to receive their
full dividends, less interest, commencing three months after the
testator's death.   Here was a period of indulgence in which the
debtor sons, except so far as the payment of interest was con-
cerned, were placed on the same plane and awarded the same
dividends as the children who owed nothing; and thereafter,
"in order," as the testator said, "that no injustice shall be done

to my other heirs and wife," they were directed to pay one fifth of their indebtedness quarterly. We repeat that if we confine ourselves to the chart which the testator himself prepared for our guidance, we cannot, with any show of reason, say that a provision allowing a debt to remain for one year against an estate is repugnant to a later provision ordering it to be paid after that year shall have expired. It is at best extremely doubtful whether we may leave that chart, and after raising up an implied repugnancy by marshaling against the plain words of his will the circumstances of the testator at the time of its execution, reject a word which he chose to employ, because, in our opinion, those circumstances did not justify him in its use.

"Words," says Mr. Jarman, "are not to be expunged upon mere conjecture, nor unless actually irreconcilable with the context of the will, though the retention of them may produce rather an absurd consequence." 1 Jarm. Wills, 401.

Yet the argument at bar entirely hinged on the circumstances of the testator. It was conceded that when he made his will and when he died the testator possessed considerable personal property and a very valuable and productive piece of realty; but it was urged that the share of income accruing to the son was so small and his indebtedness was so large that an injunction to pay the latter out of the former involved an impossibility. But how could the testator, when he wrote his will, have known what would be the value of his estate at his death; what children would die before him, or what would be the income of the survivors? Men's anticipations of wealth, as shadowed in their wills, are not usually on a narrowing scale. In point of fact, the testator lived five years after the date of his will; his estate increased in value, and if the realty, for whose sale he made ample provision, had been disposed of within the year, the immense disproportion between the income of the legatee and his debt to the estate would have disappeared. When that sale shall be made his income will not be less than $3,000 per annum, a sum sufficient to pay his debt in eight years. Under the construction contended for, his debt would not be discharged in forty years.

The whole argument against the alleged impossibility implied in the testator's direction, resolves itself into a mere play upon words. When a man directs that one sum shall be deducted from another, he means that the latter, if it turns out to be

the smaller, shall be appropriated to the payment of the former. We have thus far assumed that the phrase, "remain as a debt to my estate," was meant as a direction that the debt should not be forthwith collected. It is as probable, however, that it was intended to describe the character of the money dealings between the father and the sons; to show, in other words, that the sums advanced or loaned by the testator were not advancements, but debts. Two things were foremost in the mind of the testator: That his children should share equally in his property, and that those who were indebted to him should pay their debt, even to the interest. One son had received from his father $25,000 more than some of the other children. The fact that he may have lost the money will not diminish the justice of the proposition that he shall repay it, especially when the bounty of the creditor has placed him in possession of a fund from which it may be paid. We think that it is straining every theory of probable intention, as well as the rules of construction, to alter a will which is unambiguous in its terms in order that the period within which this repayment may be made shall be prolonged beyond the lifetime of a generation.

The exceptions are sustained, and the adjudication will be corrected.

A decree was entered in accordance with this opinion; whereupon, this appeal was taken, specifying for error: (1, 2) The action of the court in sustaining the exceptions; and (3) in holding that under said sixth clause of testator's will it was the intention of the testator that the indebtedness of James B. Simes (amounting at testator's death to $24,827.32) should remain a debt, and that the executors and trustees under said testator's will should, after the first year after testator's decease, first deduct from the quarterly income of said James B. Simes the interest on his said indebtedness, and deduct from the balance of his said quarterly income 20 per cent of the principal of his said indebtedness, and in the event of there not being sufficient income due said James B. Simes to pay 20 per cent of the principal of his said indebtedness, then to apply the whole of his said income, after the payment of interest, to the payment of the principal of said James B. Simes' indebtedness, until the whole of said indebtedness is paid.

*George W. Arundel* and *R. O. Moon,* for appellant.—Testa-

tor would not direct interest to be reserved out of a particular fund for one purpose if, at the same time, he intended to confiscate the entire fund for some other purpose.

It is unimportant whether we regard the testator as having used the wrong word by a slip of the pen, or as having used the word that he intended, but with a modified or secondary meaning.

In either view the court can carry out the testator's defectively expressed intention without going beyond the line of adjudicated cases. Hart v. Tulk, 2 De G. M. & G. 300, seems to have been this case in principle.

Without any further quotations we will conclude with a citation of some of the cases that illustrate the extent to which courts will go in giving effect to a testator's imperfectly expressed intention. Martineau v. Rogers, 8 De G. M. & G. 328; Kennedy v. Sedgwick, 3 Kay & J. 540; White v. Hill, L. R. 4 Eq. 265; Haydon v. Rose, L. R. 10 Eq. 224; Wilmot v. Wilmot, 8 Ves. Jr. 10; Re Dodgson, 1 Drew, 440.

In Malone v. Dobbins, 23 Pa. 296, the supreme court went as far in construing the will in favor of an equitable distribution as is necessary in this case.

In Re Barr, 2 Pa. St. 428, 45 Am. Dec. 608, the supreme court construed the word "survivors" to mean "representatives."

It has become so common to read the word "or" as if written "and" under certain circumstances that a lengthy citation of such cases would be superfluous. The alteration is always an important one, usually affecting title.

In Boyd's Estate, 9 Phila. 337, the court read "and" for "or" to avoid an injustice no greater than would occur in this case.

In Hellerman's Appeal, 115 Pa. 120, 8 Atl. 768, this court corrected a mistake in a will, although it was certainly possible to have enforced the provision as written.

*Bernard Gilpin,* for appellees.—Where there is no palpable mistake in the will the appellant must show more than an insufficiency of income to carry out its strict letter, in order to move the court to make such a radical change in it as is asked here.

In all cases where any change in a will has been made there have been some facts or circumstances which warrant the court in acting; but here it does seem that all arguments in favor of

appellant are answered by the reasoning in the opinion of this court in Baker's Appeal, 115 Pa. 590, 8 Atl. 630, in which the following rule for the construction of wills is given and approved: "The cardinal rule for the construction of wills is that the intent of the testator must be gathered from the will itself. Than this rule there is probably no one that is supported by so great a multitude of authorities. Moreover it is said in Reck's Appeal, 78 Pa. 432, by Mr. Justice SHARSWOOD, that all mere technical rules of construction must give way to the plainly expressed intention of the testator, if that intention be lawful. Again; where there is no ambiguity in the terms of the will a doubt suggested by extraneous circumstances cannot be permitted to affect its construction." See also Sponsler's Appeal, 107 Pa. 95.

PER CURIAM:

The controversy concerning the construction of the will of Samuel Simes has been so clearly and well disposed of in the court below that we can do nothing better than concur in the disposition thus made.

The decree is affirmed and the appeal dismissed, at the costs of the appellant.